UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY MURDOCK,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:15-cv-1058

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 42 years of age on his alleged disability onset date. (PageID.253). He possesses a tenth grade education and previously worked as a construction worker and motor vehicle assembler. (PageID.792, 860). Plaintiff applied for benefits on September 24, 2009, alleging that he had been disabled since May 22, 2008, due to "heart problems." (PageID.253-54, 282). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.124-28). On January 14, 2011, Plaintiff appeared before ALJ Kyle Andeer with testimony being offered by Plaintiff and a vocational expert. (PageID.69-99). In a written decision dated January 27, 2011, the ALJ determined that Plaintiff was not disabled. (PageID.123-30). The Appeals Council subsequently remanded the matter for further administrative proceedings. (PageID.137-39).

On April 30, 2012, Plaintiff appeared before ALJ Thomas English with testimony being offered by Plaintiff and a vocational expert. (PageID.48-68). In a written decision dated July 23, 2012, the ALJ determined that Plaintiff was not disabled. (PageID.34-41). After the Appeals Council declined to review the ALJ's determination, Plaintiff initiated legal action in federal court. The parties subsequently stipulated to remand the matter to the Commissioner for further administrative action. (PageID.904-11).

On September 22, 2014, Plaintiff appeared before ALJ Thomas English with

testimony being offered by Plaintiff and a vocational expert. (PageID.853-80). In a written decision dated October 22, 2104, the ALJ again determined that Plaintiff was not disabled. (PageID.786-94). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.759-62). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2010. (PageID.788). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that through Plaintiff's date last insured Plaintiff suffered from (1) degenerative disease of the cervical spine; (2) degenerative joint disease of the right shoulder; and (3) diabetes mellitus, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.788-90).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of Plaintiff's date last insured Plaintiff retained the capacity to perform light work subject to the following limitations: (1) no lifting, carrying, pushing, or pulling more than 10 pounds with his right upper extremity; (2) no reaching overhead with his right arm; (3) no more than frequent reaching with his right arm; (4) no more than frequent handling, fingering, or feeling with his right hand; (5)

5

no more than frequent climbing of ramps or stairs; (6) no climbing ladders or scaffolds; (7) no crawling; (8) no work at unprotected heights or around moving machinery; and (9) no concentrated exposure to vibration. (PageID.790).

The ALJ found that Plaintiff could not perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 350,000 jobs nationwide which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.870-73). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.         **Treating Physician Doctrine**

Plaintiff argues that the ALJ failed to afford appropriate weight to the opinions expressed by two of his treating physicians, Dr. Julie Dodds and Dr. Eva Hecht. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

      A.     Relevant Medical History

Before addressing the opinions in question and the ALJ's assessment of such, a brief discussion of Plaintiff's relevant medical history is helpful.

Beginning in 2008, Plaintiff began experiencing arm and neck pain. (PageID.535-36, 543-44). A June 2008 MRI of Plaintiff's cervical spine revealed mild to moderate abnormalities at C5-6. (PageID.518-19). August 2008 x-rays of Plaintiff's cervical spine revealed "mild" disc space narrowing at C5-6. (PageID.517). August 2009 electrodiagnostic testing revealed that Plaintiff was experiencing right-sided cervical radiculopathy at C5-6. (PageID.477-78). On April 29, 2010, Plaintiff underwent surgery, specifically anterior cervical discectomy with fusion at C5-6, performed by Dr. Mohamed Elnabtity. (PageID.646-48). On January 18, 2011, Plaintiff underwent surgery on his right shoulder, performed by Dr. Julie Dodds, to repair a partial-thickness tear of his rotator cuff. (PageID.679-80).

On May 23, 2011, Plaintiff participated in a consultive examination performed by Dr. Elaine Kountanis. (PageID.722-25). Plaintiff refused to move or otherwise participate in testing

involving his right upper extremity, alleging pain and numbness. (PageID.722-25). The doctor noted, however, that Plaintiff's "right arm did not show any skin changes consistent with causalgia[2] and he did not withdraw with touching the right arm and hand." (PageID.723). The doctor further observed that "since there was no atrophy of the muscles notes on examination today [Plaintiff] must be using [his right upper extremity] sometimes." (PageID.724). The results of this examination were otherwise unremarkable. (PageID.722-25). X-rays of Plaintiff's right shoulder, performed the same day, were "normal." (PageID.721).

B.     Dr. Dodds

On February 22, 2011, Dr. Dodds reported that Plaintiff was subject to the following "permanent" restrictions: (1) no pushing, pulling, or lifting more than two pounds with his right arm; (2) he cannot perform work more than 18 inches away from his body; and (3) he cannot perform work at or above shoulder level. (PageID.700). The ALJ afforded "little weight" to this opinion for the following reasons:

> Such extreme permanent limitations, again, are inconsistent with the overall evidence of record, and are not even supported by any specific visit reports of Dr. Dodds. The limitations were given only one month after the claimant underwent major shoulder surgery, at a time when he was still in the early stages of recovery. There is no way that Dr. Dodds, or anyone else, could have predicted the future course of that recovery, and there is [no][3] follow-up medical evidence to document the accuracy of such prognostication.

---

[2] Causalgia is "a chronic pain condition seen after the section (damage, cutting) of a nerve. It is characterized by a chronic burning pain and hypersensitivity in the area supplied by that nerve." *See* Causalgia, available at http://www.myvmc.com/diseases/causalgia-complex-regional-pain-syndrome-type-2/ (last visited on Dec. 6, 2016).

[3] As Defendant observes, it almost certain that the ALJ mistakenly erred by omitting the word "no" in this clause given the context and the lack of support in the record for Dr. Dodds' opinion.

(PageID.792).

The ALJ's rationale for discounting Dr. Dodds' opinion is supported by substantial evidence. The doctor's opinion is neither supported by the record as a whole or her own treatment notes. Moreover, as the ALJ noted, the doctor expressed her opinion barely one month after Plaintiff underwent shoulder surgery. There is nothing in the record to suggest that at that point in time Plaintiff's recovery was complete or that his long-term functional ability could be determined. Two additional points should be noted. First, Dr. Dodds did not provide any articulation of her opinion or identify any records which supported such, but instead simply completed a "check box" form. (PageID.700). As courts increasingly recognize, such forms are of questionable value. *See, e.g., Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *8 n.6 (W.D. Mich., Mar. 19, 2014) (recognizing that if "unaccompanied by explanation or unsupported by physician's notes," such fill-in-the-blank forms are of limited value). Second, Dr. Dodds did not express her opinion until after the expiration of Plaintiff's insured status and there is nothing in the record to suggest that the doctor was of the opinion that the limitations in question pre-date the expiration of Plaintiff's insured status.

C.   Dr. Hecht

On October 17, 2011, Dr. Hecht reported that Plaintiff was subject to the following functional limitations: (1) he can only lift/carry less than 10 pounds; (2) during an 8-hour workday, he can stand/walk and sit for less than 2 hours each; (3) he must be able to alternate between sitting and standing every 5 minutes; (4) during an 8-hour workday, he would need to lie down 1-8 times; (5) he can never twist, stoop, or crouch; and (6) he cannot balance. (PageID.727-28). The ALJ

afforded "little weight" to this opinion for the following reasons:

> They are inconsistent with the overall medical and other documentary evidence of record, and are not even supported by the visit reports of Dr. Hecht, herself. Instead, they appear to be based on the claimant's own subjective statements related to this doctor. In fact, on the same date that Dr. Hecht placed the extreme limitations on the claimant noted above, October 17, 2011, that doctor examined the claimant and made absolutely no findings of any abnormalities, other than the subjective pain complaint (Exhibit 32F); and, in the previous visit, in April 2011, that doctor noted only some tenderness (Exhibit 32F).

(PageID.792).

The ALJ's assessment of Dr. Hecht's opinion is supported by substantial evidence. As previously noted, the record fails to support that Plaintiff is limited to lifting/carrying less than 10 pounds. Furthermore, the opinion that Plaintiff suffers from such extreme limitations regarding his ability to sit, stand, walk, and balance enjoys no support in the record. As the ALJ also noted, Dr. Hecht's contemporaneous treatment notes do not support the opinion in question. (PageID.733-36). Likewise, Dr. Hecht merely completed a fill-in-the-blank form and did not identify any records or findings that supported her opinion. Finally, Dr. Hecht did not express the opinion in question until long after Plaintiff's insured status expired and there is nothing in the record to suggest that the doctor was of the opinion that the limitations she identified pre-date the expiration of Plaintiff's insured status.

**II.        Remand Order**

Plaintiff next argues that he is entitled to relief because the ALJ failed to comply with the Appeals Council Remand Order. Whether the ALJ complied with a Remand Order does not form a basis for relief in this Court. *See, e.g., Crandle v. Commissioner of Social Security*, 2015 WL

5586436 at *7 (W.D. Mich., Sept. 22, 2015) ("[w]hether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision. Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process").

**III.**     **Vocational Expert Testimony**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed in the national economy approximately 350,000 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

**CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  December 29, 2016                          /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge